[Cite as *Wilmington Savings Fund Society v. Salahuddin*, 2020-Ohio-6934.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Wilmington Savings Fund Society, FSB, d.b.a. Christiana Trust as Owner Trustee of The Residential Credit Opportunities Trust III, | : | |
| | : | |
| | : | No. 19AP-190 |
| Plaintiff-Appellee, | | (C.P.C. No. 17CR-11307) |
| | : | |
| | : | (REGULAR CALENDAR) |
| v. | : | |
| Ameena C. Salahuddin, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2020

**On brief**: *Keith D. Weiner & Associates Co., LPA* and *Suzana Krasnicki*, for appellee. **Argued:** *Suzana Krasnicki.*

**On brief:** *Ameena C. Salahuddin*, pro se. **Argued**: *Ameena C. Salahuddin.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Ameena C. Salahuddin, pro se, appeals from a judgment entry and foreclosure decree of the Franklin County Court of Common Pleas entered on March 6, 2019, in favor of plaintiff-appellee, Wilmington Savings Fund Society, FSB, d.b.a. Christiana Trust as Owner of The Residential Credit Opportunities Trust III ("Wilmington"). In its decision, the trial court granted Wilmington's motion for summary judgment against Salahuddin and its motion for default judgment against other defendants who are not parties to this appeal. Additionally, the trial court dismissed Salahuddin's counterclaim against Wilmington and her motion for summary judgment. For the reasons

that follow, we sustain in part and reverse in part the decision of the trial court and remand the matter for further proceedings consistent with this decision.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  The underlying foreclosure action commenced December 22, 2017, with the filing of a complaint for money damages, foreclosure, and other equitable relief by Wilmington that named as defendants Salahuddin and other parties not involved in this appeal.[1]

{¶ 3}  Salahuddin purchased a home at 6147 Olde Orchard Drive, Columbus, Ohio 43213 in 2008 with a loan she obtained from The American Eagle Mortgage Corp.  On or about October 16, 2008, Salahuddin signed and delivered to The American Eagle Mortgage Corp. a promissory note ("the Note") in which she promised to pay The American Eagle Mortgage Corp. or its transferee the principal of $132,863.00, plus interest at the rate of 6.25 percent per annum.  The loan was insured through the Federal Housing Administration ("FHA").  As part of the same transaction, Salahuddin signed and delivered the mortgage deed ("the Mortgage") for the Olde Orchard Drive home as security for the Note. The Note and the Mortgage were subsequently assigned to other entities, including JPMorgan Chase Bank, N.A., and ultimately to Wilmington.

{¶ 4}  Wilmington claims Salahuddin has defaulted in payment of the Note. Consequently, Wilmington has declared the debt due, has accelerated the debt, and demands immediate payment in full.  Wilmington attached to its complaint numerous exhibits, including a copy of the Note executed October 16, 2008, a copy of the Mortgage executed October 16, 2008, the assignments of the Mortgage from The American Eagle Mortgage Corp. to numerous successors until Wilmington, to which it was assigned on or about May 10, 2017.

---

[1] Prior to the commencement of the underlying matter, JPMorgan Chase Bank, N.A. had filed a foreclosure action against Salahuddin for the Note and the Mortgage on October 25, 2013. *JPMorgan Chase Bank, N.A. v. Salahuddin*, Franklin C.P. No. 13CV-11816.  The trial court permitted Wilmington to be substituted as plaintiff in that action on May 5, 2015.  After the trial court found that required notices had not been given before the foreclosure action had been commenced, Wilmington moved for dismissal without prejudice, which the trial court granted on February 4, 2016.  Wilmington filed a second foreclosure action against Salahuddin on July 27, 2016, which the trial court dismissed, again on Wilmington's motion, on July 14, 2017. *Wilmington Trust v. Salahuddin*, Franklin C.P. No. 16CV-6987

{¶ 5} Salahuddin, pro se, filed a request for mediation on February 2, 2018 and, on February 12, 2018, filed her answer and counterclaim. Wilmington answered Salahuddin's counterclaim on March 12, 2018.

{¶ 6} The trial court referred the underlying matter to mediation. However, at the scheduled mediation hearing, Salahuddin indicated she did not wish to proceed without legal counsel and, therefore, mediation was not held. The trial court restored the underlying matter to the active docket and issued an order amending the case schedule.

{¶ 7} On September 24, 2018, Wilmington filed a motion for summary judgment against Salahuddin on its complaint and on Salahuddin's counterclaim against Wilmington. Wilmington attached in support of its motion the affidavit of Michael Surowiec,[2] Vice-President of Asset Management for AMIP Management, LLC, the mortgage servicer for Wilmington at the time the underlying action was filed. Attached as exhibits to the Surowiec affidavit were a stated true and accurate copy of the Note, a stated true and accurate copy of the Mortgage, stated true and accurate copies of the assignments of the Mortgage beginning February 20, 2013 through May 10, 2017, a stated true and accurate notice of default and intent to accelerate that Wilmington sent Salahuddin by both certified and first class mail on February 23, 2016, and a payment history of payments received on Salahuddin's loan. Also attached to the Surowiec affidavit were stated true and accurate copies of two letters JPMorgan Chase Bank, N.A. had sent to Salahuddin on October 9 and December 11, 2012 regarding her options to pay the past-due amount on the mortgage. Both letters also contained the following language, "[a]s required by [HUD], we have scheduled a JM Adjustment Services representative to visit your home on behalf of Chase within the next 20 days to discuss a possible repayment plan. * * * This face-to-face meeting could provide a solution to help you pay the past-due amount on your mortgage." (Ex. 9 at 1, 3, attached to Sept. 24, 2018 Wilmington's Mot. for Summ. Jgmt.) Neither contained a date for the face-to-face meeting that was referenced in each letter.

{¶ 8} On October 22, 2018, Salahuddin filed a motion requesting leave to file a memorandum contra Wilmington's motion for summary judgment, instanter. Salahuddin

---

[2] We note that affiant's surname is spelled "Suroweic" in this affidavit but is spelled "Surowiec" in a supplemental affidavit of this individual and in Wilmington's briefs. Not knowing which spelling is correct, we use the spelling "Surowiec" throughout this decision for the sake of consistency.

attached numerous exhibits to the motion, including an affidavit she had executed on October 8, 2015. The same date, she filed a motion for summary judgment and memorandum contra Wilmington's motion for summary judgment. On November 6, 2018, the trial court granted Salahuddin's motion for leave and accepted as filed the memorandum in opposition she had filed on October 22, 2018. The trial court also granted Wilmington additional time to respond to Salahuddin's motion for summary judgment and memorandum contra Wilmington's motion for summary judgment.

{¶ 9} On November 27, 2018, Wilmington filed a brief in opposition to Salahuddin's motion for summary judgment and reply brief in support of its motion for summary judgment. Wilmington included in its motion for summary judgment Paragraph 6(B) of the Note, which references HUD regulations limiting a lender's right to require immediate payment, which states as follows:

### 6. BORROWER'S FAILURE TO PAY

\* \* \*

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(Emphasis sic.) (Ex. 1 at 2, attached to Wilmington's Mot. for Summ. Jgmt.)

{¶ 10} Paragraph 9(d) of the Mortgage provides:

### 9. Grounds for Acceleration of Debt.

\* \* \*

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights. In the case of payment defaults, to require

> immediate payment in full and foreclose if not paid. This Security instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(Emphasis sic.) (Ex. 2 at 5, attached to Wilmington's Mot. for Summ. Jgmt.)

{¶ 11} Wilmington also addressed Salahuddin's claim regarding Wilmington's failure to schedule a face-to-face meeting as required by 24 C.F.R. 203.604. Wilmington argued it was in compliance with the FHA regulations for face-to-face meetings, and stated in pertinent part:

> Further, [Wilmington], even though it isn't located within 200 miles of the mortgaged property nor is its servicer, sent [Salahuddin] another request for a Face to Face [sic] Meeting. Said letter is dated July 14, 2017. Said letter was sent by certified mail, and after a visit to the property was completed, [Wilmington] was told that [Salahuddin] did not reside at the property, and that the property was rental property. (Fn. 1. *See* the Supplemental Affidavit of Michael Surowiec[3], ¶¶ 6-8, which is attached hereto, incorporated herein and marked as Exhibit A; *see also* the Exhibits attached to said Affidavit. The Supplemental Affidavit will be referred to as "Pl. Supp. Aff.") [Wilmington] was exempt from 24 CFR 203.604 but sent [Salahuddin] a request for a face to face meeting anyway to ensure compliance. [Salahuddin] avoided the meeting since the individuals whom opened the door advised [Wilmington] that they were renters, and the Ms. Salahuddin did not reside there. (Fn. 2. Pl. Supp. Aff. ¶¶ 6-8.)
>
> 24 CFR 203.604 requires that the mortgagor make a reasonable effort to arrange a face to face meeting, and such reasonable effort requires that a letter be sent out and a visit to the property be made, as long as the property is within 200 miles of the lender or its servicer. * * * There is no requirement that [Wilmington] actually meet with [Salahuddin]; the only requirement is that a reasonable effort be made to make contact with [Salahuddin]. Both JPMorgan Chase and [Wilmington] attempted to make contact with [Salahuddin]. [Salahuddin] is obviously avoiding contact so that she can later try to allege that [Wilmington] did not comply with the regulations. * * *
>
> * * *

---

[3] As noted earlier in this decision, Wilmington filed an affidavit of this individual as exhibit A in support of its motion for summary judgment, but the individual's surname on the earlier affidavit was spelled "Suroweic."

> [Wilmington] also directs the [trial court] to [Salahuddin's] Affidavit, which was attached to her Motion for Summary Judgment, at ¶ 5, where she states that no one ever conducted a face to face meeting with her. It is important to note here that [Salahuddin] doesn't say that she never received the letters sent to her regarding the face to face meetings, and further, she doesn't say that no one ever came to the property to conduct a face to face meeting, she specifically says that the face to face meetings didn't occur. 24 CFR 203.604 doesn't require that a face to face meeting actually take place; it only requires that the lender or servicer make a reasonable effort to arrange a meeting, which was done by both JPMorgan Chase and [Wilmington], in this matter.

(Nov. 27, 2018 Wilmington's Memo. in Opp. to Salahuddin's Mot. for Summ. Jgmt. at 3-4.)

{¶ 12} On December 13, 2018, the trial court granted Salahuddin's motion for an extension of time to file a reply in support of her own motion for summary judgment, giving her until December 21, 2018 to file.  On December 21, 2018, however, Salahuddin filed a 23-page reply brief titled "Memorandum in Support of Defendant's Motion for Summary Judgment; Reply Memorandum of Defendant in Opposition of Plaintiff's Motion for Summary Judgment."

{¶ 13} On December 28, 2018, the trial court sua sponte ordered Salahuddin's December 21, 2018 filing stricken for failure to conform with the trial court's December 13, 2018 decision and entry and because the 15-page reply brief exceeded the page limitation for a reply brief by more than 16 pages.[4]  The trial court's December 28, 2018 order allowed Salahuddin to file a complying amended reply brief within seven days of the date of the order; i.e., not later than January 4, 2019.  The trial court's order specified that no further extensions would be granted, and page limitations would be strictly enforced.

{¶ 14} On January 9, 2019, Salahuddin filed a motion for leave to file her amended reply brief, instanter.  In her motion, she stated she received notice from the trial court's e-filing system on January 3, 2019 and that the trial court had stricken the reply brief she had filed December 21, 2018.  She also stated that, because the trial court had given her an additional seven days to file a reply brief, she had until January 9, 2019—the seventh day

---

[4] The trial court subsequently acknowledged that, in its December 28, 2018 decision, it had referred to Loc.R. 12.01 of the Franklin County Court of Common Pleas, General Division, in error, and that the section applying to page limits of reply briefs is Loc.R. 12.02, which limits reply briefs to no more than seven pages. *See* Feb. 9, 2019 Decision and Entry at 2.

after she received notice of the trial court's December 28, 2018 order—to file a conforming reply brief. The trial court denied Salahuddin's motion on January 14, 2019.

{¶ 15} On January 25, 2019, Salahuddin filed a motion requesting that the trial court reconsider its January 14, 2019 decision denying her January 9, 2019 motion to file her amended reply brief instanter, arguing that it both conformed to the page limitation of Loc.R. 12.01 [sic] of the Franklin County Court of Common Pleas, General Division and was timely filed. Wilmington timely filed a brief in opposition. On February 19, 2019, the trial court denied Salahuddin's motion for reconsideration because the brief exceeded the seven-page limit for reply briefs under Loc.R. 12.02, and it was untimely, having been filed five days late. Additionally, the trial court stated it found no excusable neglect by Salahuddin.

{¶ 16} On March 6, 2019, the trial court entered judgment on Wilmington's complaint, its motion for default judgment, and its motion for summary judgment on its complaint (and on Salahuddin's counterclaim), and on Salahuddin's answer and counterclaim and her motion for summary judgment. The trial court found there were no genuine issues of material fact and that Wilmington was entitled to summary judgment as a matter of law. The trial court further found Salahuddin's motion for summary judgment not well-taken. Therefore, the trial court granted Wilmington's motion for summary judgment, denied Salahuddin's motion for summary judgment, dismissed Salahuddin's counterclaim with prejudice, and issued a foreclosure decree.

{¶ 17} Salahuddin timely appeals from the trial court's March 6, 2019 judgment.

## II. ASSIGNMENTS OF ERROR

{¶ 18} Salahuddin presents for our review six assignments of error.

> 1. The trial court erred when it granted summary judgment in favor of appellee, where appellee failed to meet all conditions precedent prior to initiating foreclosure.
>
> 2. Trial court erred when it granted summary judgment in favor of appellee, as there were genuine issues of material fact, including but not limited to, whether Wilmington Savings Fund Society, FSB is a holder in due course, whether plaintiff violated the Real Estate Settlement Procedures Act, the Ohio Consumer Sales Practices Act, allocation of payments, doctrine of unclen [sic] hands, equitable estoppel, and whether the mortgage was properly executed.

3. Trial court erred in denying appellants' [sic] motion for leave to file instainer [sic] and granting summary judgment in favor of appellee.

4. Trial court erred when it granted summary judgment in favor of appellee when there is uncertainty of the accounting of appellee.

5. Trial court erred by awarding summary judgment in favor of the appellee when there is an uncertainty of common law fraud prior to initiating foreclosure called into question.

6. Trial court erred when it granted summary judgment in favor of appellee when appellee's jury trial was requested and never waived.

## III.  LAW AND DISCUSSION

### A.  Standard of Review

{¶ 19} The trial court resolved Wilmington's claims against Salahuddin by summary judgment after orders were entered governing discovery between the parties.

> Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App. 3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision   granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes  of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App. 3d 100, 103, 701 N.E.2d 383.

*Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184, ¶ 18 (10th Dist.).

{¶ 20} When reviewing on appeal an order granting a motion for summary judgment, an appellate court must use the same standard of review as the trial court. *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One of Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993).  An appellate court's review of summary judgment disposition is independent and without deference to the trial court's determination.  *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993).  In determining whether a trial court properly granted summary judgment, an appellate court must review the evidence according to the standard set forth in Civ.R. 56,

as well as that stated in applicable case law. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Cooper v. Red Roof Inns, Inc.*, 10th Dist. No. 00AP-876 (Mar. 30, 2001).

{¶ 21} Civ.R. 56(C) requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56 has been described as a means to facilitate the early assessment of the merits of claims, to foster pre-trial dismissal of meritless claims, and to define and narrow issues for trial. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. No. 102119, 2016-Ohio-1466, ¶ 92. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170 (1997) (Cook, J., concurring in part and dissenting in part). As such, summary judgment is a procedural device designed to promote judicial economy.

> "The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. ' "The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist." ' *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643, 671 N.E.2d 578 (1996) (citations omitted.)"

*Erickson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-74, 2017-Ohio-1572, ¶ 19, quoting *Thevenin v. White Castle Mgt. Co.*, 10th Dist. No. 15AP-204, 2016-Ohio-1235, ¶ 45 (Brunner, J., concurring). Thus, a party seeking summary judgment on the grounds that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and must identify those parts of the record which demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996).

{¶ 22} If the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party does not respond, summary judgment, if otherwise appropriate, shall be entered against the nonmoving party. *Id.* The nonmoving party may not rest on the mere

allegations or denials of his or her pleadings but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293; *see also Erickson* at ¶ 19-20.

{¶ 23} More specifically, under our standard of review of Civ.R. 56(C) motions for summary judgment, a plaintiff moving for summary judgment on a note secured by a mortgage must present Civ.R. 56 evidence establishing (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instruments, (2) if the movant is not the original note holder and/or mortgagee, an unbroken chain of assignments and transfers, (3) all conditions precedent have been met, (4) the grantor of the note and mortgagor is in default, and (5) the amount of principal and interest due. *U.S. Bank Natl. Assn. v. Lewis*, 10th Dist. No. 18AP-550, 2019-Ohio-3014, ¶ 23, citing *Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. No. 2010-CA-00291, 2011-Ohio- 3203, ¶ 40-45. *See also U.S. Bank Natl. Assn. v. George*, 10th Dist. No. 14AP-817, 2015-Ohio-4957, ¶ 10-13 .

## B. Assignments of Error

### 1. First Assignment of Error

{¶ 24} For her first assignment of error, Salahuddin argues the trial court erred in granting Wilmington's motion for summary judgment because there remained a genuine issue of material fact as to whether Wilmington met all conditions precedent prior to initiating the foreclosure action.

{¶ 25} Part 203, Title 24 of the Federal Code of Regulations contains the regulations applicable to federally insured mortgages for single-family mortgage insurance. As relevant here, Salahuddin asserts Wilmington failed to demonstrate through its Civ.R. 56 evidentiary quality materials that it satisfied the conditions precedent contained in both 24 C.F.R. 203.602 and 203.604.

{¶ 26} Although Salahuddin construes compliance with the Department of Housing and Urban Development ("HUD") regulations as conditions precedent, appellate districts in Ohio are split on whether certain provisions in Part 203, Title 24, C.F.R., constitute conditions precedent to bringing a foreclosure action or whether they constitute affirmative defenses. *See U.S. Bank Natl. Assn. v. Cavanaugh*, 10th Dist. No. 18AP-358, 2018-Ohio-5365, ¶ 15-18, 35 (noting Ohio courts of appeals differ over whether 24 C.F.R. 203.604(b) operates as a condition precedent or an affirmative defense; a condition precedent would place the initial burden of demonstrating compliance with 24 C.F.R. 203.604(b) on the party moving for summary judgment, while an affirmative defense would place the burden

on the party opposing summary judgment to raise the affirmative defense and come forward with evidence demonstrating a dispute of fact). Here, because Salahuddin also raised Wilmington's alleged failure to comply with the HUD regulations as a defense, the issue is whether Wilmington satisfied its evidentiary burden on summary judgment demonstrating there remained no genuine issue of material fact as to whether it complied with 24 C.F.R. 203.602 and 203.604(b).

{¶ 27} First, we examine whether Wilmington as the moving party demonstrated there remains no genuine issue of material fact about its compliance with 24 C.F.R. 203.602 relating to the delinquency notice precedent to following the provisions in 24 C.F.R. 203.604(b) for the required face-to-face contact with the mortgagor.[5]

---

[5] 24 C.F.R. 203.604 provides:

> Contact with the mortgagor.
>
> (a) [Reserved]
>
> (b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced, or at least 30 days before assignment is requested if the mortgage is insured on Hawaiian home land pursuant to section 247 or Indian land pursuant to section 248 or if assignment is requested under § 203.350(d) for mortgages authorized by section 203(q) of the National Housing Act.
>
> (c) A face-to-face meeting is not required if:
>
> (1) The mortgagor does not reside in the mortgaged property,
>
> (2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,
>
> (3) The mortgagor has clearly indicated that he will not cooperate in the interview,
>
> (4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or
>
> (5) A reasonable effort to arrange a meeting is unsuccessful.
>
> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of

{¶ 28} In her memorandum in opposition to Wilmington's motion for summary judgment, Salahuddin argued that none of the default letters sent by Wilmington or its predecessors in interest complied with 24 C.F.R. 203.602. Specifically, Salahuddin argued that 24 C.F.R. 203.602 requires the notice of default to be "on a form supplied by [HUD] or, if the mortgagee wishes to use its own form, on a form approved by [HUD]." Salahuddin provided documents to the trial court outlining what HUD requires in a notice to satisfy 24 C.F.R. 203.602, including the information that must be included in the cover letter and an accompanying brochure. Salahuddin maintained throughout the proceedings that she never received a letter satisfying these requirements and that there was no indication that the letters from Wilmington or its predecessors in interest were in a form approved by HUD.

{¶ 29} In its response to Salahuddin's memorandum in opposition, Wilmington made a blanket assertion that the January 28, 2013 letter from Chase, its predecessor in interest, to Salahuddin satisfied the HUD requirements. Wilmington did not provide

---

either, or it is known that the mortgagor is not residing in the mortgaged property.

(e)

(1) For mortgages insured pursuant to section 248 of the National Housing Act, the provisions of paragraphs (b), (c) and (d) of this section are applicable, except that a face-to-face meeting with the mortgagor is required, and a reasonable effort to arrange such a meeting shall include at least one trip to see the mortgagor at the mortgaged property, notwithstanding that such property is more than 200 miles from the mortgagee, its servicer, or a branch office of either. In addition, the mortgagee must document that it has made at least one telephone call to the mortgagor for the purpose of trying to arrange a face-to-face interview. The mortgagee may appoint an agent to perform its responsibilities under this paragraph.

(2) The mortgagee must also:

(i) Inform the mortgagor that HUD will make information regarding the status and payment history of the mortgagor's loan available to local credit bureaus and prospective creditors;

(ii) Inform the mortgagor of other available assistance, if any;

(iii) Inform the mortgagor of the names and addresses of HUD officials to whom further communications may be addressed.

testimony in any affidavit averring that any of the default letters were on a form supplied by HUD or on a form approved by HUD.[6]

{¶ 30} The Ninth District Court of Appeals has considered an argument similar to Salahuddin's in defending against summary judgment when a mortgagee did not respond with Civ.R. 56(C) evidentiary quality material that it had complied with 24 C.F.R. 203.602, leaving unsettled a genuine issue of material fact on a motion for summary judgment. In *Lakeview Loan Servicing, LLC v. Dancy*, 9th Dist. No. 27889, 2016-Ohio-7106, the Ninth District concluded that a mortgagee did not satisfy its burden under Civ.R. 56 when the borrower argued that the delinquency letter was lacking several mandatory components and supported his assertion by attaching a HUD memorandum setting forth the minimum requirements that must be in the written notification of delinquency. When the movant/ mortgagee did not respond by demonstrating that the default letter was on a form supplied by HUD or on a form approved by HUD, the Ninth District concluded it was improper for the trial court to grant summary judgment in favor of the mortgagee. *Lakeview Loan Servicing, LLC* at ¶ 16-18.

{¶ 31} The reasoning of the Ninth District in *Lakeview Loan Servicing, LLC* is compelling and applies to the facts of the matter before us. Although Wilmington and its predecessors in interest sent several letters to Salahuddin over a number of years intended to notify her that she was in default, including the January 28, 2013 letter from Chase and the February 23, 2016 letter from Shellpoint Mortgage Servicing, Wilmington did not respond with Civ.R. 56 materials establishing that any of these letters satisfied all the HUD requirements for adequate delinquency notice under 24 C.F.R. 203.602. We conclude that Wilmington has not satisfied its burden under Civ.R. 56 to dispel all genuine issues of material fact to entitle it to summary judgment. More specifically, Wilmington has not provided to the trial court Civ.R. 56(C) evidentiary quality material to settle as a matter of law whether it or any of its predecessors in interest provided written notification of delinquency to Salahuddin in the manner required by 24 C.F.R. 203.602.

---

[6] Wilmington also did not respond to or provide compliance evidence in response to Salahuddin's argument that HUD requires a specific publication, the HUD-PA-426 brochure, *How to Avoid Foreclosure*, https://www.hud.gov/sites/documents/22775_PA426H.PDF (accessed Dec. 28, 2020), to accompany any default letter sent before January 10, 2014 in order to satisfy 24 C.F.R. 203.602; and for a default letter sent after January 10, 2014, an updated publication, the HUD-2008-5-FHA brochure, *Save Your Home: Tips to Avoid Foreclosure*, https://www.hud.gov/sites/documents/2008-5FHA.PDF (accessed Dec. 28, 2020).

{¶ 32} Salahuddin also argues Wilmington failed to comply with the face-to-face meeting requirement of 24 C.F.R. 203.604. Salahuddin challenges factual elements of Surowiec's supplemental affidavit, specifically the averments concerning the purported visit of a representative to her home.

{¶ 33} The plain language of 24 C.F.R. 203.604 provides that a face-to-face meeting is not required if "[t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." 24 C.F.R. 203.604(c)(2). The Surowiec affidavit contained an averment that neither Wilmington nor the servicer AMIP has an office or branch within 200 miles of the mortgaged property. Salahuddin provided no evidence to create a material issue of fact as to Wilmington's averment by affidavit on this fact. Thus, the trial court correctly considered this exception in disregarding Salahuddin's arguments about lack of compliance by Wilmington with 24 C.F.R. 203.604(b) that requires a face-to-face meeting with the mortgagor. Wilmington has factually established that is not required to make reasonable efforts to arrange a face-to-face meeting under 24 C.F.R. 203.604.

{¶ 34} For the foregoing reasons, Salahuddin's first assignment of error is sustained in part and overruled in part.

### 2.  Second, Fourth, and Fifth Assignments of Error

{¶ 35} In her second assignment of error, Salahuddin argues the trial court erred in granting summary judgment to Wilmington on the additional defenses and claims Salahuddin asserted in her October 22, 2018 combined memorandum in opposition to Wilmington's motion for summary judgment and her separate cross-motion for summary judgment. We simultaneously address Salahuddin's fourth and fifth assignments of error, in that many of the issues raised in these assignments of error are subsumed in our analysis of her second assignment of error.

{¶ 36} In her fourth assignment of error, Salahuddin argues the trial court erred in granting summary judgment to Wilmington despite her argument that there  remains uncertainty as to the accounting of the amount owed. Similarly, in her fifth assignment of error, Salahuddin argues the trial court erred in granting summary judgment despite her argument that there remains a genuine issue of material fact with respect to her claim of common law fraud.

{¶ 37} Despite the wording of her second assignment of error, Salahuddin's arguments in her appellate brief are limited to her argument that there remain genuine issues of material fact related to whether Wilmington violated RESPA as codified at 12 U.S.C. 2601, whether Wilmington violated the TILA as codified at 15 U.S.C. 1601, and whether Wilmington or any of its predecessors in interest committed common law fraud.

{¶ 38} The trial court considered and rejected Salahuddin's arguments and entered judgment in favor of Wilmington on Salahuddin's additional defenses. We review the trial court's determination as to each of those defenses, limiting our analysis to only those arguments Salahuddin addresses in the body of her appellate brief, pursuant to App.R. 12(A)(2). *Taneff v. Lipka*, 10th Dist. No. 18AP-291, 2019-Ohio-887, ¶ 30 (noting "[a]n appellate court has discretion to disregard an assignment of error presented for review if the party raising it 'fails to argue the assignment separately in the brief, as required under App.R. 16(A)' "), quoting App.R. 12(A), citing *State v. Brown*, 10th Dist. No. 16AP-753, 2017-Ohio-7134, ¶ 14 (declining to address part of an assignment of error not argued separately in the body of the brief).

{¶ 39} Salahuddin's alleged RESPA violation has a statute of limitations of three years from the date of the alleged violation. 12 U.S.C. 2605; 12 U.S.C. 2614; *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App.3d 213, 2010-Ohio-2902, ¶ 24 (10th Dist.) (noting the three-year statute of limitations applicable to RESPA claims under 12 U.S.C. 2605). Because Salahuddin alleged Wilmington's predecessor in interest failed to respond to her July 2012 and January 2014 qualified written requests, the statute of limitations for those RESPA claims would have run by July 2015 and January 2017, respectively. Salahuddin did not file her RESPA counterclaim until February 12, 2018, outside the three-year statute of limitations for either one of the alleged violations.

{¶ 40} As to Salahuddin's alleged TILA violation, Salahuddin relies on the same alleged failure of Wilmington's predecessors in interest to respond to her request for information for the qualified written requests. A claim alleging a violation of TILA pursuant to 15 U.S.C. 1641(f)(2) has a statute of limitations of one year. *Sessley* at ¶ 24, citing 15 U.S.C. 1640(e).

{¶ 41} Summary judgment is warranted in favor of Wilmington on Salahuddin's RESPA and TILA claims, because, even if those statutes apply, her claims are barred by the statute of limitations.

{¶ 42} Salahuddin's last argument under her second assignment of error is that she presented sufficient evidence of fraud to overcome Wilmington's motion for summary judgment. Specifically, Salahuddin asserts she demonstrated that, from January 2010 to December 2012, she submitted a total of $5,934.96 in overpayment of her monthly mortgage payments but that Wilmington or its predecessors in interest did not credit her principal balance with those payments.

{¶ 43} Civ.R. 56(C) requires, "[s]ummary judgment shall be rendered forthwith if the *pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action*, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.)

{¶ 44} Salahuddin's counterclaim states only a RESPA claim ("FIRST COUNT: RESPA"); no other count is set forth. Additionally, the counterclaim does not allege fraudulent intent on the part of Wilmington. A plaintiff cannot prevail on a claim that is not pled. *See Morrison v. Skestos*, 10th Dist. No. 04AP-244, 2004-Ohio-6985, ¶ 15-18 (finding that the trial court did not err in dismissing claims purportedly based on fraud where the plaintiff failed to plead that claim with particularity pursuant to Civ.R. 9(B)); *Sutton Funding, LLC v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645, ¶ 53-54 (2d Dist.) (finding the trial court properly dismissed a counterclaim where the claimant failed to state a claim for fraud under Civ.R. 9(B)); *Hanick v. Ferrara*, 7th Dist. No. 19 MA 0074, 2020-Ohio-5019, ¶ 125 ("[W]here a plaintiff must plead the fraud claim with particularity, a broad reference to the prior seven pages of the complaint (some of which contain the negligent misrepresentation allegations) will not satisfy the Civ.R. 9(B) obligation. The court is not required to comb the factual recitations for arguable fraud claims.").

{¶ 45} Even assuming Salahuddin's counterclaim stated a fraud claim, we find that she did not meet her burden of proof in responding to Wilmington's summary judgment motion or in identifying specific parts of the evidentiary record that show a genuine issue of material fact regarding a claim of "fraud." Also, as we previously observed, her pleading

does not say anything about Wilmington's intent. Additionally, Salahuddin's contemporaneously filed affidavit does not address most aspects of her answer or counterclaim, stating only that she made payments totaling $75.040.48, including payments of "Taxes, Insurance, etc." That in itself does not state fraud, with or without the required particularity.

{¶ 46} Viewing the evidence in the record in a light most favorable to Salahuddin, we conclude that Salahuddin's claim of common law fraud is not supported. She neither pled a claim of fraud nor submitted sufficient evidence supporting a claim of fraud. We conclude the trial court did not err in granting summary judgment in favor of Wilmington on Salahuddin's claim of common law fraud. Consequently, we overrule Salahuddin's second assignment of error.

{¶ 47} In her fourth assignment of error, Salahuddin contends the trial court erred in granting summary judgment to Wilmington despite Salahuddin's argument that there remains uncertainty of the amount she owed under the loan. Similarly, Salahuddin asserts in the fifth assignment of error that the trial court erred in granting summary judgment on her claim of common law fraud. Salahuddin's arguments under her fourth and fifth assignments of error both rely on her assertion that she submitted overpayments on her monthly mortgage payments totaling $5,934.96 from January 2010 to December 2012, but neither Wilmington nor its predecessors in interest credited those payments toward the principal amount she owed. However, as we observed with respect to Salahuddin's second assignment of error, despite Salahuddin arguing her overpayment in her answer and counterclaim and her motion for summary judgment, she did not submit to the trial court sufficient evidence demonstrating she actually made these payments. Moreover, Salahuddin also did not address her alleged overpayment or her common law fraud claim in the affidavit she submitted in support of her motion for summary judgment. By contrast, Wilmington provided the payment history listing the record of payments received on Salahuddin's account. The documents Wilmington submitted show a principal balance of $124,902.53 plus interest at the rate of 6.25 percent per annum from November 1, 2012. Salahuddin maintains this amount is inaccurate, but she provides no documentation establishing the excess payments she claims to have made.

{¶ 48} Reviewing the evidence in a light most favorable to Salahuddin, we conclude there remains no genuine issue of material fact as to the amount Salahuddin owes under the loan. Accordingly, the trial court did not err in granting summary judgment in favor of Wilmington on Salahuddin's claim of common law fraud.

{¶ 49} For the foregoing reasons, Salahuddin's fourth and fifth assignments of error are overruled.

### 3. Third Assignment of Error

{¶ 50} In her third assignment of error, Salahuddin argues the trial court erred when it denied her motion for reconsideration to file her reply brief. The trial court acknowledged that, with respect to the page limitation on reply briefs, its December 28, 2018 entry erroneously cited Loc.R. 12.01 rather than Loc.R. 12.02 of the Franklin County Court of Common Pleas, General Division. The trial court observed, however, that its December 28, 2018 entry "also clearly states that the previously non-conforming reply brief filed 'exceeds the page limitation for a reply brief . . . by more than sixteen pages. . .' and notes that [Salahuddin] filed a 23-plus page brief. The Court is not persuaded that [Salahuddin] believed she could file a 15-page reply brief under these circumstances." (Feb. 19, 2019 Decision and Entry at 2.) Additionally, the trial court stated that, under Ohio law, Salahuddin, who was acting pro se, was bound by the same rules and procedures as litigants who retain counsel. *Lias v. Beekman*, 10th Dist. No. 06AP-1134, 2007-Ohio-5737, ¶ 7. The trial court concluded, therefore, "that [Salahuddin] knows the Rules applicable to her filings." (Feb. 19, 2019 Decision and Entry at 2.)

{¶ 51} The trial court further explained that it had not denied Salahuddin's motion for leave to file her reply, instanter, solely because it exceeded the applicable page limit under Loc.R. 12. Rather, the trial court's December 28, 2018 order clearly stated that Salahuddin could file a conforming amended reply brief within seven days from the date of the order; that is, not later than January 4, 2019. Salahuddin admits she received notice of that order from the trial court's e-filing system on January 3, 2019. Consequently, as the trial court noted in its decision, Salahuddin could have timely filed an amended reply brief on that day or the next (January 4, 2019) and complied with the trial court's orders in its December 28, 2018 Decision and Entry. The trial court further noted that Salahuddin had not made any argument of excusable neglect, other than to state she did not receive notice until January 3, 2019. Under the circumstances, the trial court found no excusable neglect

on Salahuddin's part, because Salahuddin did not assert it or provide an explanation amounting to it.

{¶ 52} It is undisputed that the trial court posted the order granting Salahuddin leave to file a reply to the electronic docket on December 28, 2018, which would have generated an email to Salahuddin's supplied email address notifying her of the same. Salahuddin's claim at oral argument concerning her ability to check her email is not a sufficient defense to not complying with the trial court's time limits for filing.

{¶ 53} We overrule Salahuddin's third assignment of error.

### 4. Sixth Assignment of Error

{¶ 54} Salahuddin argues in her sixth and final assignment of error that the trial court erred when it granted summary judgment to Wilmington despite her request for a jury trial. That a party defending against summary judgment requested a jury trial is not a defense, taken by itself, that defeats summary judgment.

{¶ 55} We overrule Salahuddin's sixth assignment of error.

## IV.  CONCLUSION

{¶ 56} Having independently examined the record, considered the briefs and arguments of the parties, and reviewed the evidence in a light most favorable to Salahuddin, we sustain in part and overrule in part Salahuddin's first assignment of error. Additionally, we overrule her second, third, fourth, fifth, and sixth assignments of error.  Accordingly, the decision of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and the matter is remanded to the trial court for further proceedings consistent with this decision regarding Wilmington's satisfaction of the requirements in 24 C.F.R. 203.602.

*Judgment affirmed in part and reversed in part;*
*remanded to the trial court for further proceedings.*

LUPER SCHUSTER and NELSON, JJ., concur.