[Cite as *Halpern v. Smith*, 2023-Ohio-1370.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STACIE HALPERN, TRUSTEE OF THE STACIE HALPERN TRUST U/A JULY 11, 1989, | : | |
| | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 111896 |
| DEREK SMITH, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 27, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-944015

### *Appearances:*

Sonkin & Koberna, LLC, Mark R. Koberna, Sean T. Koran, Rodd A. Sanders, and Christopher S. Battles, *for appellant*.

Meyers, Roman, Friedberg & Lewis, Peter Turner, Ronald P. Friedberg, and Kathryn E. Meloni, *for appellees*.

SEAN C. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Stacie Halpern, Trustee of the Stacie Halpern Trust U/A July 11, 1989 ("Halpern"), appeals the decision of the trial court that

granted summary judgment in favor of appellees Derek L. Smith and Rebecca Smith ("the Smiths"). Upon review, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} At the outset, we must emphasize that this is not a case involving a right of first refusal. It involves a right of first offer. They are decidedly different as the analysis below will show.

{¶ 3} This case stems from an agreement between the parties for a "Right of First Offer" (also referred to as an "ROFO"). We have reviewed the evidence in the record and include a brief overview of some of the facts herein.

{¶ 4} In 2018, the Smiths owned a large parcel of land in Moreland Hills, Ohio. Halpern resided with her husband, Jeffrey Halpern, on property adjacent to the Smiths' property. In March 2018, Halpern purchased approximately 14.5 acres of land abutting her property from the Smiths, and the Smiths retained their remaining property. Along with the purchase agreement, the parties entered a "Right of First Offer Agreement" on the Smiths' remaining land, which is referred to as the "option parcel."

{¶ 5} Section 1 of the ROFO Agreement sets forth the "Right of First Offer" and provides as follows:

> 1. **Right of First Offer**. If at any time during the Term [defined in Section 2 of the ROFO agreement] Owner shall desire to sell the Option Parcel (or sell the direct or indirect ownership interests of Owner) to any third party (whether or not such third party is an affiliate of Owner) or a Family Member (collectively, the "Third Party"), prior to discussing, soliciting or negotiating any such sale with any Third Party, Owner shall notify Halpern in writing of its intention to sell.

Following delivery of such notice, which notice shall include Owner's proposed terms of the sale, Halpern may, but shall have no obligation to, make an offer to Owner with respect to a potential purchase of the Option Parcel, and for a period of forty-five (45) days thereafter, Owner and Halpern shall discuss and negotiate in good faith regarding Halpern's Offer. If the parties fail, despite good faith efforts, to reach agreement on such purchase within such forty-five (45) day period, then Owner shall thereafter be free to negotiate with any Third Party. If Owner fails to sell the Option Parcel within six (6) months of the date of notice to Halpern, then before again marketing the Option Parcel to a Third Party, Owner shall again give notice to Halpern of Owner's intent to sell in accordance with the terms of this Section 1.

{¶ 6} Additionally, among other provisions of the ROFO Agreement, Section 5 includes a waiver of compliance when a party fails to require performance of any provision thereunder and Section 11 entitles a party to seek an injunction to prevent breaches when a party has not performed in accordance with the specific terms of the ROFO Agreement.

{¶ 7} The record shows that in October 2019, the Smiths executed an exclusive "Right to Sell Agreement" with real estate agent Craig Cantrall. Jeffrey Halpern was verbally informed that the Smiths intended to list the option parcel for $2,750,000, and the Halperns verbally declined to exercise the ROFO at that price, which was later followed by an email stating the Halperns had decided not to exercise the "First Right of Offer to negotiate for the property." As stated by Halpern in her deposition, "they came to us through Craig and were wanting to sell the property at 2.75 and that was a nonstarter."

{¶ 8} Thereafter, the property was marketed at the same price offered to Halpern, and real estate developer Jason Friedman expressed interest in purchasing

the option parcel through his company, JAF Acquisitions ("JAF"). The Smiths began negotiations with JAF, and a purchase agreement was executed between the Smiths and JAF on January 30, 2020. The purchase agreement with JAF included a provision that conditioned the buyer's obligation to close upon a signed written waiver of the ROFO by Halpern. However, the Smiths' obligation to close as the seller was not conditioned upon such a waiver.

{¶ 9} After the Smiths entered the purchase agreement with JAF, the Smiths sought to obtain a formal, signed waiver of Halpern's rights under the ROFO. On March 17, 2020, the Smiths sent a written notice with proposed terms to Halpern, which stated it "memorializes the prior notice and email communications" of the parties. On March 18, 2020, Halpern executed a statement indicating she had decided not to exercise the ROFO.

{¶ 10} The Smiths and JAF entered multiple amended purchase agreements, but they did not close the sale within six months of the March 17, 2020 notice to Halpern. In November 2020, the Smiths and JAF reached a tentative agreement to an "Amended and Restated Purchase Agreement," which included a purchase price of $1,500,000, a change to the portion of the option parcel being sold, and other terms. On December 9, 2020, the Smiths sent Halpern a new written "Notice of First Right of Offer" that included proposed terms, which were consistent with the Smiths' tentative agreement with JAF.

{¶ 11} On December 10, 2020, Halpern elected to exercise the right of first offer, initiating the 45-day negotiation period set forth in Section 1 of the ROFO

Agreement. The Smiths and Halpern engaged in some negotiations. However, JAF informed the Smiths of its intent "to proceed under the existing purchase agreement documents (up through the Third Amendment)" for the purchase of the sale property, effective June 30, 2020. As a result, on December 21, 2020, the Smiths sent Halpern a letter purporting to revoke the December 9, 2020 notice and provided an "Updated Notice of First Right of Offer." After Halpern's attorney responded with a letter disputing whether the Smiths had the right to revoke the December 9, 2020 notice, the Smiths' attorney represented in an email that the December 21 notice was rescinded and that the Smiths intended to discuss and negotiate in good faith to reach an agreement. The negotiations continued, and Halpern sent draft transaction documents with regard to Halpern's proposed purchase, which the Smiths returned with revisions.

{¶ 12} The record reflects that in January 2021, Jason Friedman's attorney sent a letter to the Smiths' attorney indicating that JAF was prepared to move forward to closing and that the Smiths had a binding purchase agreement with JAF. The Smiths included preclosing conditions with Halpern that required the receipt of a release from JAF and a guarantee there would be no litigation with JAF, with whom the Smiths were under contract to sell the property.

{¶ 13} Halpern and the Smiths were not able to successfully negotiate a purchase agreement, and Halpern determined it was necessary to file a lawsuit. Derek Smith attests in a supplemental affidavit that after the lawsuit was filed, the Smiths entered into a settlement agreement with JAF and JAF no longer has any

rights or claims in the property under the purchase agreement with the Smiths. He also attests that the Smiths still own the property and acknowledges that the ROFO Agreement remains in effect.

{¶ 14} Halpern's complaint, which was filed on February 12, 2021, raises claims for breach of contract, specific performance, and injunctive relief. The Smiths filed counterclaims for declaratory judgment and for abuse of process. After the completion of discovery, the Smiths filed a motion for summary judgment on Halpern's complaint and on their counterclaim for declaratory judgment. Halpern filed a motion for partial summary judgment on her claim for breach of contract as to liability and on the Smiths' counterclaims.

{¶ 15} On July 18, 2022, the trial court magistrate issued a decision with findings of fact and conclusions of law. Halpern filed objections to the magistrate's decision, and the Smiths filed a response. On August 22, 2022, upon consideration of the objections and after an independent review, the trial court issued an order that adopted the magistrate's decision, implicitly overruled the objections, and entered a ruling on the summary judgment motions.[1]

---

[1] We note that the trial court did not explicitly rule on Halpern's objections to the magistrate's decision. *See* Civ.R. 53(D)(4)(d). However, the court's order adopting the magistrate's decision indicates that the objections were before the court for consideration and its ultimate judgment reflects the court implicitly ruled on the objections. Other courts have recognized objections to a magistrate's decision can be implicitly overruled by a trial court. *See generally Galloway v. Galloway*, 6th Dist. Erie No. E-21-043, 2023-Ohio-29, ¶ 2; *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, ¶ 18, fn. 3; *Chatfield & Woods Sack Co., Inc. v. Nusekabel*, 1st Dist. Hamilton No. C-980315, 1999 Ohio App. LEXIS 4983, 5 (Oct. 22, 1999). No challenge has been raised herein.

{¶ 16} In part, the trial court determined that "the parties did not enter a binding and enforceable agreement for the sale and purchase of the option parcel as essential and material terms were not agreed upon and the terms not agreed to cannot be defined by the Court because said terms are uncertain and indefinite." Additionally, the trial court found "any breaches by [the Smiths] as to the [ROFO Agreement] were immaterial as [Halpern] eventually exercised the right and the parties attempted to negotiate an agreement." Also, the trial court found that "[Halpern] did not demonstrate compensatory damages" and that Halpern was "not entitled to specific performance or an injunction." Ultimately, the trial court (1) granted the Smiths summary judgment as to the affirmative claims brought by Halpern and as to the Smiths' counterclaim for declaratory judgment, and (2) granted Halpern summary judgment as to the Smiths' counterclaim for abuse of process, which was unopposed and granted, and denied the remainder of Halpern's motion. The trial court further declared that "the Right of First Offer is a valid and enforceable contract that remains in place between the parties to the agreement."

{¶ 17} Halpern timely filed this appeal claiming the trial court erred in granting summary judgment as to each of the three claims raised in the complaint.

## I.    Law and Analysis

{¶ 18} An appellate court reviews a trial court's ruling on a motion for summary judgment de novo. *Smathers v. Glass*, Slip Opinion No. 2022-Ohio-4595, ¶ 30, citing *A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, 168 N.E.3d 1157, ¶ 15. The appellate court conducts an independent review without deference to the

trial court's findings, examines the evidence available in the record, and determines, as if it were the trial court, whether summary judgment is appropriate using the standard set forth in Civ.R. 56. *Smathers* at ¶ 30, citing *Wilmington Sav. Fund Soc., FSB v. Salahuddin*, 2020-Ohio-6934, 165 N.E.3d 761, ¶ 19-20 (10th Dist.). To prevail under Civ.R. 56, the movant must show that "'(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.'" *Smathers* at ¶ 31, quoting *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

{¶ 19} We first consider Halpern's breach-of-contract claim. "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41.

{¶ 20} The parties do not dispute that the ROFO Agreement constituted a valid and enforceable contract between the parties. However, in addition to the ROFO Agreement, Halpern maintains that the December 9, 2020 notice and Halpern's acceptance thereof constituted a valid and binding contract for the sale of the property. We disagree.

{¶ 21} Initially, we recognize that there is a lack of case law in Ohio dealing with a right of first offer, which differs from a right of first refusal. Generally, "a

'right of first refusal,' is a promise to present offers to buy property made by third parties to the promisee in order to afford the promisee the opportunity to match the [third party's] offer." *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 212, 567 N.E.2d 262 (1991). Here, Halpern had a right of first offer, which gave Halpern the right to make an offer to the Smiths for a potential purchase of the option parcel before the Smiths were free to market the property and negotiate a sale with a third party.[2] Although Halpern cites to limited out-of-state authority, the cases she relies upon are factually distinguishable and are not viewed as controlling authority.[3]

{¶ 22} Because this is a matter of contract, we apply ordinary contract principles herein. The construction of written contracts is a matter of law. *See Long Beach Assn. v. Jones*, 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998), citing *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). "Where terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent

---

[2] Unlike the "first right to purchase" language used in *Latina*, which afforded the promisee the first opportunity to purchase certain lots, in this matter, the language used in the ROFO Agreement afforded Halpern the right to "make an offer" with respect to a "potential purchase of the Option Parcel." *See id.* at 214.

[3] For instance, in *Kelly v. Ammex Tax & Duty Free Shops W., Inc.*, 162 Wash.App. 825, 256 P.3d 1255 (2011), the language of the agreement specifically stated a notice of desire to sell "shall be deemed an offer of the premises," but the seller failed to offer the property to the grantee before offering the property to third parties. In *Rcm Ls II, LLC v. Lincoln Circle Assocs., LLC*, C.A. No. 9478-VCL, 2014 Del.Ch. LEXIS 133 (July 28, 2014), the language of the ROFO agreement specifically required all material terms to be provided in a "Property Offer Notice" and afforded the grantee 30 days to accept the offer and elect to purchase the property, but the seller agreed to sell the property to a third party without sending a property offer notice to the grantee. The language of the ROFO Agreement herein differs as do the circumstances of this case.

not expressed in the clear language employed by the parties." *Id.* at 577, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). Moreover, "'[t]he agreement of parties to a written contract is to be ascertained from the language of the instrument, and there can be no intendment or implication inconsistent with the express terms thereof.'" *Latina* at 214, quoting *Blosser v. Enderlin*, 113 Ohio St. 121, 148 N.E. 393 (1925), paragraph one of the syllabus.

{¶ 23} Pursuant to the clear terms of the ROFO Agreement, the Smiths were to provide written notice of their "intention to sell" with "proposed terms of the sale" before "discussing, soliciting or negotiating any such sale with any Third Party." Halpern had the right to "*make an offer to Owner* with respect to *a potential purchase* of the Option Parcel," and if she invoked that right, then this triggered a negotiation period "of forty-five (45) days thereafter," during which the parties were required to "discuss and negotiate in good faith regarding *Halpern's Offer*." (Emphasis added.) If the parties failed, despite good faith efforts, to reach an agreement within the 45-day period, then the ROFO Agreement provided that the Smiths "shall thereafter be free to negotiate with any Third Party." However, if the option parcel was not sold within six months of the date of notice to Halpern, "then before again marketing the Option Parcel to a Third Party, Owner shall again give notice to Halpern of Owner's intent to sell" in accordance with Section 1 of the ROFO Agreement.

{¶ 24} It is clear from the express terms of the ROFO Agreement in this case, that it is merely a contract affording Halpern the right to "make an offer" for the

"potential purchase" of the option parcel upon the notice of intention to sell with proposed terms that was to be provided by the Smiths before the option parcel was marketed to and negotiated with a third party. Upon Halpern electing to exercise this right, the agreement required good faith negotiations on "Halpern's Offer," but also contemplated what would occur if the parties failed to reach an agreement. There was no requirement for the Smiths to accept the offer made by Halpern or for the parties to enter a binding agreement. The terms of the contract are clear.

{¶ 25} Consistent with the ROFO Agreement, the December 9, 2020 notice that was sent to Halpern clearly states: "Pursuant to Section 1 of the [ROFO] Agreement * * * this *notice* is to inform you that [the Smiths] ("Owners"), *intend to sell a portion* of the Option Parcel * * *." (Emphasis added.) The notice included a proposed purchase price of $1,500,000 and other proposed terms of sale, which generally proposed that the owners would lease two sublots and there would be a lot split, the owners would retain an option to purchase, and that there would be easements to be addressed.[4] The notice asked Halpern to "[p]lease confirm whether or not you elect to exercise your first Right of Offer or waive and decide not to purchase the Sale Parcel pursuant to the ROFO [Agreement] * * *." On the election that was endorsed by Halpern, Halpern acknowledged receipt of the written notice of the Smiths' "intent to sell" and the "proposed terms" of sale. Although Halpern elected to exercise what was worded as the "right to purchase," this was stated "to

---

[4] Although the price was lower than the earlier notice, the proposed terms were markedly different.

begin the 45-day negotiation period set forth in Section 1 of the ROFO [Agreement.]" Contrary to Halpern's assertion, the December 9, 2020 notice and Halpern's acceptance thereof did not create a binding contract for the sale of the property.

{¶ 26} The essential elements for formation of a contract include "'an offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.'" *Rayess v. Educational Comm. for Foreign Med. Graduates*, 134 Ohio St.3d 509, 2012-Ohio-5676, 983 N.E.2d 1267, ¶ 19, quoting *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. Additionally, "[i]n order to form any contract, there must be a meeting of the minds of the parties regarding the contract's essential terms, and those terms must be reasonably certain and clear." *Bank of New York Mellon v. Rhiel*, 155 Ohio St.3d 558, 2018-Ohio-5087, 122 N.E.3d 1219, ¶ 19, citing *Kostelnik* at ¶ 16-17.

{¶ 27} It is evident from the record that the December 9, 2020 notice was provided in accordance with Section 1 of the ROFO agreement, and upon Halpern's election to exercise her right thereunder, the parties were to begin the 45-day negotiation period. There was never a meeting of the minds between the parties, and they never reached a definite and certain agreement. As the trial court recognized, the parties did not "divide real estate parcels into Sublots, form legal descriptions for the parcels when the parcels have not been agreed to and defined by the parties, and draft licenses and easements. These are material and essential terms that were not agreed to fully by the parties[.]" As was the case in *Kertes Ents.,*

*L.L.C. v. Sanders*, 8th Dist. Cuyahoga No. 109584, 2021-Ohio-4308, at most, they established an intent to form a contract if the parties could agree to the terms. *Id.* at ¶ 27. Having failed to agree, they never formed a contract. *See id.* at ¶ 27-29.

{¶ 28} Upon our review, we determine as a matter of law that Halpern has failed to establish the existence of a binding and enforceable contract for the sale of the property. Without an enforceable sale or purchase contract, Halpern cannot establish her claim for breach of contract thereon, and her claims to any other relief, including compensatory damages, specific performance, and injunctive relief, necessarily fail in this regard.

{¶ 29} Because the only enforceable contract was the ROFO Agreement, it is all we shall further address. A material breach of contract is a breach essential to the purpose of the contract. *Whitt Sturtevant, LLP v. NC Plaza LLC*, 2015-Ohio-3976, 43 N.E.3d 19, ¶ 30 (10th Dist.), citing *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 170, 583 N.E.2d 1056 (1st Dist.1990). Halpern claims the Smiths repeatedly violated the ROFO Agreement by marketing the option parcel and contracting to sell it to a third party without providing proper written notice. She further maintains reasonable minds could determine that the Smiths failed to negotiate with Halpern in good faith. We have considered Halpern's arguments, and it is unnecessary to detail the claimed violations herein.

{¶ 30} Although the Smiths did not strictly adhere to the written-notice requirements, the record demonstrates that Halpern received notice of the Smiths' intention to sell and that Halpern declined to exercise the ROFO. Section 5 of the

ROFO Agreement allowed for a waiver of compliance, and the Smiths remained obligated by the terms of the ROFO Agreement. In fact, Halpern elected to exercise the ROFO upon the new written notice that was provided on December 9, 2020, which contained proposed terms in accordance with the ROFO Agreement. Because it is clear the alleged written-notice violations did not affect the enforceability or purpose of the contract, even when construing the evidence in a light most favorable to Halpern, reasonable minds could only conclude the claimed written-notice violations were not material breaches. Regardless, even if it could be found that material breaches had occurred in this regard or upon Halpern's claim that the Smiths failed to comply with the requirement to negotiate Halpern's offer in good faith, Halpern still must be able to show she suffered damages.

{¶ 31} "To recover on a breach-of-contract claim, the claimant must prove not only that the contract was breached, but that the claimant was thereby damaged." *Metro. Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228, 235, 646 N.E.2d 528 (1st Dist.1994), citing *Munoz v. Flower Hosp.*, 30 Ohio App.3d 162, 168, 507 N.E.2d 360 (6th Dist.1985); *see also 180 Degree Solutions LLC v. Metron Nutraceuticals, LLC*, 8th Dist. Cuyahoga No. 109986, 2021-Ohio-2769, ¶ 54. Upon reviewing the record herein, Halpern's claims must fail because she cannot demonstrate her entitlement to compensatory damages, specific performance, or injunctive relief.

{¶ 32} Section 11 of the ROFO Agreement reflects the parties agreed that when a party has not performed in accordance with the specific terms of the ROFO

Agreement, the other party "shall be entitled to seek an injunction or injunctions to prevent breaches of the provision of this Agreement." Although Halpern maintains that at a minimum she is entitled to an injunction to prevent the property from being sold, the record herein demonstrates that the Smiths are no longer bound by a purchase agreement with JAF, the property has not been sold, and the parties remain bound by the terms of the ROFO Agreement that still exists.[5] Therefore, Halpern cannot demonstrate entitlement to injunctive relief, and specific performance or injunctive relief are not otherwise warranted.

{¶ 33} Monetary damages or damages for loss of value were not contemplated by the express terms of the ROFO Agreement. Even if we accept that Halpern may seek such damages for the alleged breaches of the ROFO Agreement, in order to raise a genuine issue of material fact on the issue of damages and survive summary judgment, Halpern must set forth specific facts to show that she can establish, with reasonable certainty, the existence and amount of her loss. *See Cleveland v. Sohio Oil Co.*, 8th Dist. Cuyahoga No. 78860, 2001 Ohio App. LEXIS 5192, 13 (Nov. 21, 2001).

{¶ 34} As stated by the Supreme Court of Ohio, "'[i]t is axiomatic that every plaintiff bears the burden of proving the nature and extent of his damages in order

---

[5] This case is distinguishable from in *Rcm Ls II,* cited by Halpern, wherein the court permanently enjoined a seller from proceeding with the pending sale of the property to a third party and required the seller to start the process over in compliance with the ROFO agreement at issue in that case. *Rcm Ls II*, C.A. No. 9478-VCL, 2014 Del.Ch. LEXIS 133, at 30. Here, the record demonstrates that there is no longer a pending sale and that the parties are still bound by the ROFO Agreement.

to be entitled to compensation.'" *Jayashree Restaurants, LLC v. DDR PTC Outparcel LLC*, 10th Dist. Franklin No. 16AP-186, 2016-Ohio-5498, ¶ 13, quoting *Akro-Plastics v. Drake Industries*, 115 Ohio App.3d 221, 226, 685 N.E.2d 246 (11th Dist.1996). "Damages that result from an alleged wrong must be shown with reasonable certainty, and a party cannot base them on mere speculation or conjecture, regardless of whether the action is in contract or tort." *Id.*, citing *Wagenheim v. Alexander Grant & Co.*, 19 Ohio App.3d 7, 17, 482 N.E.2d 955 (10th Dist.1983); *see also Elias v. Gammel*, 8th Dist. Cuyahoga No. 83365, 2004-Ohio-3464, ¶ 25.

{¶ 35} Although Halpern provided an expert report on damages, it is not determinative herein. A review of the ROFO Agreement shows it has no original contract price and does not provide for any measure of damages. Furthermore, contrary to Halpern's argument, there is simply no basis upon which reasonable minds could conclude the parties more likely than not would have reached a binding agreement, but for any alleged breach. The ROFO Agreement, by its very nature, provides Halpern with an opportunity for a potential purchase. The record demonstrates the parties were unsuccessful in their negotiations and never reached mutual agreement with respect to certain essential and material contractual terms. It would be purely speculative to assume a binding agreement would have been reached. To the extent Halpern might believe she is entitled to the property on the terms reached with JAF, we reiterate that she had a right of first offer, not a right of first refusal. Because Halpern's assertions are too remote and too speculative to be

proven with reasonable certainty, she has failed to establish a genuine issue of material fact regarding damages resulting from a breach.

{¶ 36} We have fully considered all issues presented and are not persuaded by any other arguments made by Halpern that are not specifically addressed herein. We conclude the Smiths are entitled to summary judgment on all of Halpern's claims. Her assignments of error are overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY J. BOYLE, J., CONCUR