[Cite as *Haught v. Kettering*, 2024-Ohio-479.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| TONY D. HAUGHT | : | |
| | : | |
| Appellant | : | C.A. No. 29864 |
| | : | |
| v. | : | Trial Court Case No. 2023 CV 01184 |
| | : | |
| CITY OF KETTERING OHIO | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on February 9, 2024

. . . . . . . . . . .

REBECCA BARTHELEMY-SMITH, Attorney for Appellant

NICOLAS E. SUBASHI and TABITHA JUSTICE, Attorneys for Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Tony Haught, appeals from a summary judgment granted to Defendant-Appellee, City of Kettering ("City"). According to Haught, the trial court erred in finding that it lacked proper jurisdiction and that Haught failed to demonstrate a sufficient likelihood of prevailing on the merits of his action. Haught also claims the trial court erred in finding that he had failed to exhaust administrative remedies.

{¶ 2} The trial court was incorrect in stating that it lacked jurisdiction, because failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional defect. However, any error was harmless because the court also found that Haught had failed to exhaust his administrative remedies. The City properly raised this defense, and there were no genuine issues of material fact on the point. Specifically, Haught failed to use the City's administrative appeal process, and no exceptions to exhaustion apply. As a result, Haught's claim was precluded. For the same reasons, the court correctly found that Haught had failed to show a likelihood of success on the merits. Accordingly, the trial court's judgment will be affirmed.

I.   Facts and Course of Proceedings

{¶ 3} On March 8, 2023, Haught filed a complaint for a temporary and permanent injunction against the City. In the complaint, Haught alleged he was the owner of a house located at 1372 Elmsdale Drive in Kettering, Ohio, and the City had issued various notices and orders to condemn the property, including a February 2, 2023 adjudication order. According to Haught, the City lacked an appeal board for adjudication orders, and he therefore asked the court to enjoin the City from demolishing the property.

{¶ 4} On May 1, 2023, the City filed an answer to the complaint, raising various affirmative defenses. The City also filed a counterclaim seeking a declaratory judgment on two grounds: (1) Haught was required to exhaust all administrative remedies before seeking court action and had failed to do so; and (2) Haught's claims for injunctive relief were barred and the City was legally allowed to proceed with all actions permitted under

its municipal code. Haught did not file an answer to the counterclaim.

{¶ 5} The court referred the matter to a magistrate, who set a preliminary injunction hearing for July 28, 2023. Prior to the hearing date, the City filed a motion for summary judgment. Haught responded to the motion on June 2, 2023, and the City then filed a reply on June 9, 2023. On July 7, 2023, the court granted the City's motion for summary judgment on both its counterclaims and vacated the injunction hearing. Haught then timely appealed from the judgment, raising two assignments of error. We will consider the assignments of error together, as they are intertwined.

## II. Alleged Error by the Trial Court

{¶ 6} Haught's first assignment of error states that:

The Trial Court Should Not Have Ruled That the Montgomery County Common Pleas Court Did Not Have Proper Jurisdiction or That Plaintiff [Does Not Have] * * * a Substantial Likelihood on the Merits.

{¶ 7} Haught's second assignment of errors states that:

The Trial Court Erred When It Ruled That the Plaintiff Has Failed to Exhaust His Administrative Remedies.

{¶ 8} Under these assignments of error, Haught contends the trial court erred in finding that it lacked jurisdiction, in finding he did not have a substantial likelihood of success on the merits of his claim, and in finding that he failed to exhaust administrative remedies. According to Haught, his only remedy was to apply to the trial court because the City did not have an established residential appeal board and, as a result, the Ohio

Board of Building Appeals ("Ohio BBA") would not consider his appeal from the City's February 2, 2023 Adjudication Order. Before we address Haught's claims, we will outline potential review standards, because the City has mentioned that either a de novo review for summary judgment or the more restrained review standard for administrative appeals may apply. Appellees' Brief, p. 6-7.

## A. Summary Judgment Standards

{¶ 9} Ohio law is well-established concerning summary judgment and applicable review standards. "The procedure set forth in Ohio Civ.R. 56 is modeled after the federal rule that authorizes summary judgment in appropriate cases." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing *Hooten v. Safe Auto Ins. Co.*, 100 Ohio St.3d 8, 2003-Ohio-4829, 795 N.E.2d 648, ¶ 16. " 'Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.' " *Id.* at ¶ 11, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

{¶ 10} "Summary judgment is appropriate if (1) no genuine issue of any material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is

adverse to the party against whom the motion for summary judgment is made." *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). " 'As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶ 11} Appellate courts apply a de novo standard of review in evaluating summary judgment decisions. *A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, 168 N.E.3d 1157, ¶ 15. In this type of review, an appellate court independently reviews evidence without deferring to the trial court's findings. *Smathers v. Glass*, 172 Ohio St.3d 84, 2022-Ohio-4595, 222 N.E.3d 554, ¶ 30, citing *Wilmington Savs. Fund Soc., FSB v. Salahuddin*, 2020-Ohio-6934, 165 N.E.3d 761, ¶ 20 (10th Dist.). Thus, a reviewing court "examines the evidence available in the record, including deposition or hearing transcripts, affidavits, stipulated exhibits, and the pleadings, *see* Civ.R. 56(C), and determines, as if it were the trial court, whether summary judgment is appropriate." *Id.*, citing *Wilmington* at ¶ 19.

## B. Administrative Appeals

{¶ 12} " 'The standards of review for a court of common pleas and an appellate court differ considerably when an administrative appeal is involved.' " *Key Ads, Inc. v.*

*Dayton Bd. of Zoning Appeals*, 2014-Ohio-4961, 23 N.E.3d 266, ¶ 12 (2d Dist.), quoting *Gem City Metal Spinning Co. v. Dayton Bd. of Zoning Appeals*, 2d Dist. Montgomery No. 22083, 2008-Ohio-181, ¶ 17. "[I]n an administrative appeal pursuant to R.C. Chapter 2506, the common pleas court considers the whole record, including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Durell v. Spring Valley Twp. Bd. of Zoning Appeals*, 2d Dist. Greene No. 2012-CA-23, 2012-Ohio-5098, ¶ 21, citing *Henley v. Youngstown Bd. of Zoning Appeals,* 90 Ohio St.3d 142, 147-148, 735 N.E.2d 433 (2000).

{¶ 13} "In contrast, when an appellate court reviews a common pleas court's decision regarding an agency order, the appellate court uses two distinct standards of review. * * * On a question of fact, an appellate court's review is limited to an abuse of discretion. * * * However, on a question of law, an appellate court's review is de novo." (Citations omitted.) *Key Ads* at ¶ 13.

{¶ 14} Having reviewed the entire record, we conclude that the proper standard is de novo. This case was not brought "as" an administrative appeal, because Haught only asked for an injunction. Also, the adjudicative order (which is all that Haught has raised) was withdrawn, and there was no administrative order from that standpoint. Finally, there were no disputed facts, so our review would be de novo, i.e., deciding if the trial court correctly applied the law.

C.   Discussion

**{¶ 15}** In granting summary judgment, the trial court reached the following conclusions: (1) a request for injunctive relief is not an independent action, and the only cause of action that could be construed from the complaint is administrative; (2) that an administrative cause of action would rely on R.C. 2506.01; (3) the City withdrew the February 2, 2023 Adjudication Order and it was no longer in effect even before Haught's action was initiated; (4) in any event, the Adjudication Order was not rendered in a quasi-judicial proceeding as required for appeal: and (5) even if these points were otherwise, the Adjudication Order was unrelated to the actions about which Haught complained. Decision Granting Defendant's Motion for Summary Judgment; Final Judgment Entry Dismissing Plaintiff's Complaint; Entry and Order Vacating Injunction Hearing (July 7, 2023) ("Decision"), p. 14-17.   The court also found that Haught's claims were barred because he had failed to exhaust his administrative remedies.   *Id.* at p. 18-20.

1.   Facts Relative to Summary Judgment

**{¶ 16}** The City's summary judgment motion was supported by the affidavit of Christine Swetz, a Code Enforcement Officer ("CEO") in the City's Planning and Development Department ("PDD").   Swetz identified various exhibits and testified about relevant actions in which she had been involved, including over 40 occasions since 2018 when she had viewed and/or inspected Haught's property.   Affidavit of Christine Swetz, ¶ 1-22 and Exs. 1-7 attached to the Affidavit.   The relevant factual background (which is uncontested) concerning the property is as follows:

{¶ 17} On October 22, 2018, the PDD issued a "Notice of Violation and Order to Comply" (2018 Notice) to Haught concerning the Elmsdale property. Swetz Aff. at ¶ 4 and Ex. 2. The notice listed the following violations of the Property Maintenance Code ("Code"), which is part of the Codified Ordinances of Kettering, Ohio: (1) Section 1323.303.8 *Motor Vehicles*; (2) Section 1323.303.7 *Roofs and Drainage*; (3) Section 1323.303.6 *Exterior Walls*; (4) Section 1323.303.12 *Chimney and Towers*; and (5) Section 1323.303.2 *Protective Treatment*. Ex. 2, p. 1-2. Due to the violations, Haught was ordered to do these things, respectively, by certain dates: "remove all inoperable and unregistered vehicles from the exterior premises" by November 5, 2018; "replace damaged deteriorating roof including all damaged deteriorating structural members, shingles, flashing & drip edge to return roof to a sound and weathertight condition" and "replace all missing gutters and downspouts" by December 20, 2018; "repair or replace all missing/damaged soffit and fascia to a structurally sound & weathertight condition" and "provide protective treatment for all exposed wood" by November 20, 2018; "repair deteriorating chimney to a structurally sound and weathertight condition" by December 20, 2018; and "remove all peeling, flaking and chipped paint from exterior of home and repaint, including window frames & trim" by December 20, 2018. *Id.*

{¶ 18} The 2018 Notice also stated, regarding the roof repair, that a permit for the work may be required. *Id.* at p. 1. Further, the notice said:

> If **you disagree with the findings in this Legal Notice** you shall have the
>
> right to appeal by filing a written basis of appeal and the required fee with
>
> the Clerk of Court within ten (10) calendar days of the date the Legal Notice

was served. To appeal Chapter 1300 violations of the Property Maintenance Code to the Maintenance Board of Appeals, pursuant to Section 1321.112 of the Code, submit five (5) copies of a written basis for the appeal plus the required $200.00 fee. * * * The basis of the appeal shall be: (a) the intent of this Code has been incorrectly interpreted; or (b) the provisions of the Code do not apply; or (c) the requirements of the Code are adequately satisfied by other means; or (d) some other reason or basis for the appeal.

(Emphasis sic.) 2018 Notice at p. 2.

**{¶ 19}** There is no indication that Haught appealed from this notice (and he has not claimed he did), and Haught did not comply with its terms. Swetz Aff. at ¶ 15.

**{¶ 20}** Subsequently, on October 9, 2019, the PDD issued another violation notice, marked "Final Notice," to Haught. Swetz Aff. at ¶ 3 and Ex. 3 ("2019 Notice"). This notice listed the same five violations, with the original dates for completion, and also stated that in all capitals that: "NOTE: CORRECTION ACTIONS ARE PAST DUE: FAILURE TO COMPLY WITH THIS FINAL NOTICE WILL RESULT IN THE ISSUANCE OF RE-INSPECTION FEES ($85 PER INSPECTION) &/ OR COURT ACTION. THE NEXT INSPECTION IS SCHEDULED FOR NOVEMBER 12, 2019." 2019 Notice, p. 1.

**{¶ 21}** The 2019 Notice contained the same language regarding appeal rights. *Id.* at p. 2. There is no evidence (and Haught did not assert) that he appealed from this notice. Haught also failed to comply with the notice. Swetz Aff. at ¶ 15.

**{¶ 22}** On April 28, 2021, PDD issued another notice of violation and order to

comply.   Swetz Aff. at ¶ 8 and Ex. 4 ("2021 Notice").   This notice eliminated the motor vehicle violation, listed the same violations as to roofs and drainage, chimneys and towers, exterior walls, and protective treatment, and added a fifth violation for "sanitation," which required removal of exercise equipment, a TV, and appliances from the exterior of the premises.   Ex. 4, p. 1-2.   The 2021 Notice stated, in all capitals: "NOTE: CORRECTIVE ACTIONS ARE PAST DUE; THE STRUCTURE MAY BE DECLARED A PUBLIC NUISANCE FOR FAILURE TO COMPLY."   *Id.* at p. 1.

**{¶ 23}** In addition, the chimney section was changed to read:

REMOVE OR REPAIR DETERIORATED CHIMNEYS ALONG WEST SIDE OF HOUSE AND REAR OF HOUSE.   REPAIR OF CHIMNEY ALONG WEST SIDE OF HOUSE REQUIRES ASSESSMENT BY A STRUCTURAL ENGINEER TO DETERMINE IF CHIMNEY IS SALVAGEABLE.   IF REPAIRED, CHIMNEY MUST BE RESTORED TO A STRUCTURALLY SOUND AND WEATHERTIGHT CONDITION BY A QUALIFIED MASON.

*Id.*

**{¶ 24}** The completion dates for the structural items were all the same, i.e., June 30, 2021, while removal of the sanitation items was required by May 12, 2021.   Ex. 4 at p. 1-2.   Again, PDD advised Haught of his appeal rights in the language previously used. As before, there was no evidence (and Haught did not assert) that he appealed, and he did not make the required structural repairs.   Swetz Aff. at ¶ 15.

**{¶ 25}** On January 12, 2022, PDD issued a "Notice to Abate a Public Nuisance" to Haught.   Swetz Aff. at ¶ 9 and Ex. 5 ("2022 Notice to Abate").   This notice informed

Haught that, after an inspection, a public nuisance had been determined to exist on the Elmsdale property due to "Blighting influence of the existing structure which contains components that are structurally unsound, unmaintained, deteriorated & dilapidated." (All capitals omitted.) Ex. 5, p. 1. The notice required Haught to abate the nuisance before February 13, 2022, by removing the conditions causing the nuisance. The corrective actions included:

• Replace damaged, dilapidated, deteriorating roof components including all damaged deteriorating structural members, shingles, flashing & drip edge to return roof to a sound and weathertight condition;

• Replace and repair all missing or damaged gutters and downspouts to provide adequate drainage away from the structure;

• Remove or repair deteriorated chimneys along west side of house and rear of house. Repair of chimney along west side of house requires assessment by a structural engineer to determine repairs necessary if chimney is salvageable. If repaired, chimney must be restored to a structurally sound and weathertight condition by a qualified mason; if chimney is removed, repair exterior wall to a structurally sound, secure & weathertight condition.

• Repair or replace all missing, damaged &/or deteriorating soffit and fascia and return components to a structurally sound & watertight condition;

• Remove all peeling, flaking and chipped paint from exterior of home and repaint, including but not limited to window frames, trim & wood elements;

- Remove all junk, trash, debris & building materials from the exterior premises;

- Obtain all required permits for the above corrective actions.

(All capitals and emphasis omitted.)   2022 Notice to Abate, Ex. 5, at p. 1.

{¶ 26} The 2022 Notice to Abate also stated that, "If you fail to comply, the City has the right to abate the nuisance, including by demolition, and to recover from you the costs for abatement."   (Emphasis sic.)   *Id.*   In addition, this notice advised Haught of his appeal rights, as follows:

**YOU HAVE THE RIGHT TO APPEAL THIS NOTICE WITHIN 10 DAYS AFTER RECEIPT BY MAKING A DEMAND IN WRITING TO THE CHIEF CODE OFFICIAL FOR A HEARING ON ANY LEGAL OR FACTUAL ISSUE RELATING TO THIS NOTICE, OR ANY QUESTION SET FORTH IN C.O. SECTION 1328.03.6.2.2(4), OR ON ANY DETERMINATION MADE BY THE CHIEF CODE OFFICIAL PURSUANT TO THE AUTHORITY GRANTED BY CHAPTER 1228.03.   THE DEMAND SHALL SPECIFY THE REASON(S) FOR THE APPEAL AND SHALL INCLUDE YOUR CORRECT ADDRESS OR THE CORRECT MAILING ADDRESS OF THE PERSON REPRESENTING YOU.   THE DEMAND SHALL BE ACCOMPANIED BY A FEE OF $200.   WRITTEN NOTICE OF THE HEARING DATE WILL BE SENT TO YOU AT THE MAILING ADDRESS YOU PROVIDE**.

(Capitals and emphasis sic.)   Ex. 5 at p. 2.

**{¶ 27}** There is no evidence and Haught does not assert that he filed an appeal as directed.

**{¶ 28}** On March 14, 2022, Haught signed a compliance agreement with PPD. *See* Swetz Aff. at ¶ 10 and Ex. 6, Compliance Agreement – Notice to Abate a Public Nuisance ("Compliance Agreement"). In the agreement, Haught agreed to complete all work needed to ensure all violations cited in the Notice to Abate were repaired, removed, or eliminated, as outlined in the agreement, and the City agreed that it would take no further action against Haught for non-compliance unless the agreed extension that was listed had expired. Ex. 6, p. 1.

**{¶ 29}** Under the agreement, Haught was to obtain issuance of all building permits by April 15, 2022. He was also required to contact the PDD to determine what building permits were required. *Id.* The remaining matters on the list were to be completed by May 31, 2022, and involved the work listed in the Notice to Abate. *Id.* at p. 1-2. The agreement further stated that, "Under Property Maintenance Code, Section 1328 Nuisance Abatement, failure of the Undersigned to perform and complete the required abatement actions within or by expiration of the agreed upon compliance extension timeframe below shall be cause for the City of Kettering to resume any and all available actions to abate the nuisance." (Emphasis sic.) *Id.* at p. 2. The listed dates were, as noted, April 15, 2022, and May 31, 2022. *Id.*

**{¶ 30}** Swetz said that she, as a CEO, had personally viewed and/or inspected the Elmsdale property more than 40 times since 2018. Swetz Aff. at ¶ 11. She also stated that Haught had failed to comply with the compliance agreement. *Id.* at ¶ 12. Among

other things, Haught did not contact the PDD to determine what permits were needed; did not request any permits by April 15, 2022; did not remove the chimney along the west side of the house or the chimney at the rear of the house by May 31, 2022; and did not repair or replace "all missing, damaged, dilapidated and deteriorating roofing and roofing components, including but not limited to framing members" by May 31, 2022.   *Id.*

**{¶ 31}** On October 26, 2022, PDD issued a "Notice of Violation and Order to Comply Condemnation Order" to Haught.   Swetz Aff. at ¶ 13 and Ex. 7 ("Condemnation Order").   The order noted that all compliance dates, including the ones in the Compliance Agreement, had expired, and it listed the same repairs that needed to be made.   *Id.* at p. 2-4.   The order further said that the violations must be corrected by November 29, 2022. In addition, the order contained the same notice regarding rights of appeal to the Property Maintenance Board of Appeals ("Board") as was listed in the prior notices of violation. *Id.* at p. 3.   Haught did not appeal the Condemnation Order to the Board, nor did he comply with the terms of this order by the dates set in the order.   Swetz Aff. at ¶ 14-15.

**{¶ 32}** On or around October 27, 2022, Haught produced a roofing plan that included removal of one chimney by Dry Tech Exteriors.   *Id.* at ¶ 16.   Although Dry Tech was told that "any and all structural work would require permits, Dry Tech did not seek any permits from the City."   *Id.* at ¶ 17.   According to Swetz, at some point in late 2022 or early 2023, Dry Tech performed roofing work on the property without obtaining the required permits.   *Id.* at ¶ 18.   Swetz stated that she and a team from the City inspected the premises on January 25, 2023, and at that time, "it became clear that Haught had not remedied the violations that existed on the property for many years and that the property

was not safe to be inhabited."  *Id.* at ¶ 19.

{¶ 33} On February 2, 2023, the City's "Building Department issued an Order prohibiting Haught from performing work on the premises without submitting the appropriate plans or seeking appropriate permits.  This order was separate and apart from the Condemnation Order issued by the Planning and Development Department."  *Id.* at ¶ 20.  *See also* Haught Affidavit attached to Haught's Response to the City's Summary Judgment Motion (June 2, 2023) ("SJ Response"), ¶ 8 and attached exhibits (bearing labels of Exs. 4 and 5).  The Adjudication Order from the City's Building Official stated that Haught could appeal the decision to the Ohio BBA within 30 days after the order was mailed.  *Id.* at Haught Ex. 4 ("Adjudication Order"), p. 1.

{¶ 34} According to Haught, he attempted to appeal to the Ohio BBA but received a letter from the City dated February 21, 2023, stating there was " 'no established residential board serving the City of Kettering.' "  Haught Aff. at ¶ 8, quoting Haught Ex. 5, p. 1.  The February 21, 2023 letter to Haught also withdrew the February 2, 2023 Adjudication Order.  *Id.*

{¶ 35} In granting summary judgment to the City, the trial court found "the evidence fails to establish that there is a genuine issue of material fact that this court has proper jurisdiction over Plaintiff's claim or whether Plaintiff has a substantial likelihood of success on the merits."  Decision at p. 15.  The court's decision was based on the absence of a proper basis for Haught's injunctive relief request.  In this regard, the court focused on the following points: Haught failed to use administrative remedies, the Adjudication Order was withdrawn; and the Adjudication Order, even if it had not been withdrawn, was not

entered in a quasi-judicial proceeding and did not determine any rights of Haught. *Id.* at p. 15-17. As noted, the court's other reason for granting summary judgment was based on Haught's failure to exhaust administrative remedies. *Id.* at p. 18-20.

## 2. Analysis

**{¶ 36}** Under established law, "[a] preliminary injunction is an extraordinary remedy; therefore, the moving party has a substantial burden in order to be entitled to the injunction." *Connor Group v. Raney*, 2d Dist. Montgomery No. 26653, 2016-Ohio-2959, ¶ 17, citing *KLN Logistics Corp. v. Norton*, 174 Ohio App.3d 712, 2008-Ohio-212, 884 N.E.2d 631, ¶ 11 (8th Dist.). "To obtain the equitable remedy of a preliminary injunction, a party must show, by clear and convincing evidence: (1) a substantial likelihood of success on the merits, (2) the existence of irreparable harm if an injunction is not issued, (3) that third-parties will not be unjustifiably harmed if an injunction is issued, and (4) that granting an injunction will serve the public interest." *State ex rel. Dann v. R&J Partnership, Ltd.*, 2d Dist. Montgomery No. 22162, 2007-Ohio-7165, ¶ 21, citing *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267-268, 747 N.E.2d 268 (1st Dist.2000).

**{¶ 37}** However, "[a] preliminary injunction is a remedy; it is not a cause of action or a claim for relief." *Premier Health Care Servs., Inc. v. Schneiderman*, 2d Dist. Montgomery No. 18795, 2001 WL 1479241, *4 (Aug. 21, 2001), citing *Black's Law Dictionary* 640 (5th Ed.1983). *Accord Bresler v. Rock*, 2018-Ohio-5138, 117 N.E.3d 184, ¶ 45 (10th Dist.) ("[i]n general, injunctive relief is a remedy, not a cause of action"); *Woods*

*v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 70 (8th Dist.) (same).

{¶ 38} Notably, Haught's complaint requesting a temporary and permanent injunction failed to specify any underlying or independent cause of action in the trial court. Haught's only claim was that the court had jurisdiction because the City lacked an appeal board to which he could appeal the City's February 2, 2023 Adjudication Order. Complaint, ¶ 9-13. Haught continued to make this assertion in his response to the summary judgment motion and has repeated this argument on appeal. SJ Response, p. 1-2; Appellant's Brief, p. 4.

{¶ 39} Having reviewed the file and applicable law, we find the Adjudication Order irrelevant, because it was withdrawn on February 21, 2023, before Haught initiated this action. Having been withdrawn, the order determined no rights and or duties of Haught, was not a final order, and had no legal effect. Whether an opportunity for appeal from that order was available is also irrelevant.

{¶ 40} The trial court concluded the only potential independent basis for the injunction complaint would have been an appeal under R.C. Chap. 2506. *See* Decision at p. 14-15.

{¶ 41} R.C. 2506.01(A) states that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code." R.C. 2506.01(C) further defines a "final order or decision" as "an order, adjudication, or decision that determines rights, duties, privileges,

benefits, or legal relationships of a person, but does not include any order, adjudication, or decision from which an appeal is granted by rule, ordinance, or statute to a higher administrative authority if a right to a hearing on such appeal is provided." Again, the February 2, 2023 Adjudication Order could not have been a final order under this statute because it was withdrawn.

{¶ 42} The other orders issued to Haught, including the October 26, 2022 Notice of Violation and Condemnation Order, provided an opportunity for an administrative appeal. In this regard, Sections 1322.11 to 1322.11.8 of the Code outline the means of appeal. Under 1322.11.2, "Any person directly affected by a decision of the Chief Code Enforcement Officer or a notice or order issued under this code shall have the right to appeal to the Property Maintenance Appeals Board (the 'Board'), provided that a written application outlining the basis for appeal is filed with the Planning and Development Department within ten (10) days after the day the decision, notice, or order was served." After an application to appeal is filed, the Board is required to hold a hearing within a reasonable time or no later than 60 days after the application is filed, unless the applicant agrees to a later hearing. Section 1322.11.3.

{¶ 43} Following the hearing, the Board's decision will be recorded in its minutes, or the Board "may issue a written decision with findings of fact and conclusions of law." Section 1322.11.6.1. Further, Section 1322.11.7 states that parties may appeal Board decisions to "a court of competent decision" but not to the Kettering City Council.

{¶ 44} The January 12, 2022 Notice to Abate also provided an avenue to appeal, also to the Board. *See* Code, Sections 1328.03.6 to 1328.03.6.3. Again, a hearing

before the Board is required, the Board must schedule a hearing within a specified time, the Board must mail a copy of its decision to the party demanding the hearing, and further appeal is taken pursuant to R.C. Chap. 2506. *Id.*

{¶ 45} All the notices and orders issued to Haught between October 9, 2018, and October 26, 2022, determined his rights and duties and were, therefore, appropriate for appeal within the City's administrative process – and then to court, pursuant to R.C. 2506.01. However, Haught failed to appeal to the Board from any of these orders.

{¶ 46} "It is a well-established principle of Ohio law that, prior to seeking court action in an administrative matter, the party must exhaust the available avenues of administrative relief through administrative appeal." *Noernberg v. City of Brook Park*, 63 Ohio St.2d 26, 29, 406 N.E.2d 1095 (1980), citing *State ex rel. Lieux v. Westlake*, 154 Ohio St. 412, 96 N.E.2d 414 (1951). " 'Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.' " *State ex rel. Teamsters Local Union 436 v. Cuyahoga Cty. Bd. of Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 19, quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

{¶ 47} Failure to exhaust administrative remedies is not a jurisdictional defect; it is an affirmative defense. *E.g., State ex rel. Harson Invests., Ltd. v. City of Troy, Ohio*, 2d Dist. Miami No. 2017-CA-22, 2018-Ohio-2748, ¶ 49, citing *Jones v. Chagrin Falls*, 77 Ohio

St.3d 456, 674 N.E.2d 1388 (1997), syllabus (applying exhaustion doctrine in context of declaratory judgment action); *Ensley v. City of Dayton*, 2d Dist. Montgomery No. 14487, 1995 WL 491116, *5 (Aug. 16, 1995) (reversing and vacating injunction granted against a city and remanding to allow the city to present evidence on an affirmative defense it had asserted).

{¶ 48} Here, the City properly raised failure to exhaust as an affirmative defense in its answer and in its counterclaims for declaratory judgment. The City also argued this point in moving for summary judgment. *See* City's Answer and Counterclaims (May 1, 2023), p. 2 and 5-6; City's Motion for Summary Judgment (May 15, 2023), p. 10-12. To the extent the court found it did not have "proper jurisdiction" over Haught's claims, that was incorrect. However, any error was harmless, because the court also found that Haught had failed to exhaust his administrative remedies. This was correct. *See Teamsters Local Union 436* at ¶ 23 ("person entitled under R.C. Chapter 2506 to appeal [an administrative order] is not entitled to a declaratory judgment where failure to exhaust administrative remedies is asserted and maintained"). This would be true as well for a party's entitlement to an injunction.

{¶ 49} "Exceptions to exhaustion have been found in two situations: (1) where no administrative remedy is available that can provide the requested relief or resorting to the remedy would be 'wholly futile'; and (2) 'when the available remedy is onerous or unusually expensive.' " *Harson Invests.* at ¶ 17, quoting *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 17, 526 N.E.2d 1350 (1988). "As to the second exception, courts have found that 'onerous and unusually expensive' means more than inconvenience and

moderate fees and expenses." *Ensley* at \*7, citing *Burt Realty Corp. v. Columbus*, 21 Ohio St.2d 265, 257 N.E.2d. 355 (1970), paragraph one of the syllabus.

**{¶ 50}** These exceptions do not apply here, nor has Haught attempted to argue them other than contending that he could not appeal the Adjudication Order. However, as noted, that order was irrelevant because it was withdrawn and was of no effect. Therefore, Haught's action against the City was barred because he failed to exhaust administrative remedies.

**{¶ 51}** For the reasons previously discussed, the trial court was also correct in concluding that Haught had failed to show a substantial likelihood of success on the merits. This finding was obvious, since Haught's failure to exhaust administrative remedies precluded his action against the City.

**{¶ 52}** Based on the preceding discussion, both assignments of error are overruled.

### III. Conclusion

**{¶ 53}** Both of Haught's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.